## Delaware and Hudson Canal Co. *versus* Carroll.

1. Under the provisions of the Mine Ventilation Act of March 3d 1870, "mining-bosses" and "miners" are fellow servants, and where the death of the latter is caused by the negligence of the former, the owner of the mine is not responsible therefor.

2. The fact that said "mining-bosses" are appointed under an Act of Assembly, which prescribes their duties, does not change this relation of "fellow servant" where it is shown the requirements of the act in regard to their selection have been complied with, and it does not appear they were incompetent or that there was negligence on the part of the mine owner, in their employment.

3. The action to recover damages for the death of the miner was brought by his widow, within a year, as required by the Act of Assembly. After the expiration of the year it was amended so as to bring in the children as plaintiffs, but no new cause of action was introduced. *Held*, that this amendment was properly allowed.

4. Mullan *v.* Steamship Co., 28 P. F. Smith 25, distinguished.

March 10th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Error to the Court of Common Pleas of *Luzerne county*: Of January Term 1878, No. 223.

Case by Mary Carroll, the widow, and minor children of John Carroll, deceased, against the Delaware and Hudson Canal Company, to recover damages for injuries resulting in the death of said John Carroll, alleged to have been caused by the negligence of the company.

John Carroll was a miner, employed in the colliery of the company. On the 26th of May 1873, an explosion occurred which caused his death. Suit was brought in the name of the widow the 8th day of November 1873, and on the 23d day of November 1875, a rule was granted to show cause why the children of decedent should not be added as plaintiffs in the case. This rule was made absolute 1st June 1877, and the names of the children were added.

There were engaged in the mine at the time of the accident a mine-boss, John P. Moore, two fire-bosses, James McDonald and Matthew Gray, and the usual miners and laborers. The court treated the case as if brought under the provisions of the Act of March 3d 1870, "To provide for the health and safety of persons and property in coal mines." The portions of the act material to this case are as follows. The eighth section is in these words:

"The better to secure the ventilation of every coal mine and colliery, and provide for the health and safety of the men employed therein, otherwise, and in every respect the owner or agent, as the case may be, in charge of every coal mine or colliery, shall employ a competent and practical inside overseer, to be called mining-boss, who shall keep a careful watch over the ventilating apparatus, over the air-ways, the travelling-ways, the pumps and sumps, the timbering; to see, as the miners advance in their excavations, that all

[Delaware and Hudson Canal Co. *v.* Carroll.]

loose coal, slate or rock overhead is carefully secured against falling; over the arrangements for signaling from the bottom to the top, and from the top to the bottom of the shaft or slope, for the purpose of talking through; and all things connected with and pertaining to the safety of the men at work in the mine. He or his assistants shall examine carefully the workings of all mines generating explosive gases, every morning, before the miners enter the coal mine or colliery, and shall ascertain that the mine is free from danger; and the workmen shall not enter the mine until such examination has been made and reported, and the cause of danger, if any exist, be removed; and he or his assistants shall also, every evening when the workmen leave the mine or colliery, go over the mine and see that the doors or passage-ways are all properly closed, and that all the air-ways are free and unobstructed to the passage of air through them; and it shall be the duty of the mining-boss to measure the ventilation at least once per week, at the inlet and outlet, also at or near the face of all gangways; and all measurements to be reported to the inspector once per month."

The concluding or twenty-fourth section is as follows:

"For any injury to person or property, occasioned by any violation of this act, or any wilful failure to comply with its provisions, by any owner, lessee or operator of any coal mine or opening, a right of action shall accrue to the party injured, for any direct damages he may have sustained thereby; and in any case of loss of life, by reason of such violation or wilful failure aforesaid, a right of action shall accrue to the widow and lineal heirs of the person whose life shall be lost, for like recovery of damages for the injury they shall have sustained."

The duty of the fire-boss, who was an assistant of the mining-boss, was to examine the chambers every morning before the men commenced work and ascertain whether fire-damp was present in the chamber. There was no evidence tending to prove that the mining-boss or the fire bosses were incompetent to discharge the duties of their respective positions, or that there was any negligence on the part of the company in their employment.

The plaintiffs alleged that Moore, the mining-boss, was negligent; that on the morning of the accident he failed to do his duty in a department which was exclusively under his oversight and control; that he permitted dangerous and explosive gases, which had accumulated in a breast worked by Carroll, to remain there without warning Carroll of their presence; that when the latter came to his work, on the morning referred to, he met the fire-boss, James McDonald, who was an assistant of the mining-boss, at the shanty of the latter in the mine, and near the base of the shaft, who told him that his breast or chamber was all right; that Carroll lighted his lamp, which was uncovered and called a naked light, and pro-

[Delaware and Hudson Canal Co. *v.* Carroll.]

ceeded into his chamber ; that immediately thereupon an explosion of gas took place, burning Carroll to such an extent that he died a few days afterwards.

The defendants, while admitting that Moore was the mining-boss and McDonald was his assistant, and, that a quantity of explosive gas had accumulated, on the morning referred to, in the breast or chamber where Carroll was in the habit of working, alleged, on the contrary, that Carroll was warned of the fact, and instructed not to go in there until the assistant, or fire-boss, had brushed it out; that, notwithstanding this warning and instruction, Carroll lighted a naked or uncovered lamp, and in the absence, both of the mining-boss and his assistant, and without their knowledge, went into the forbidden chamber, thus causing the explosion which cost him his life.

John Dakin, a witness for the plaintiffs, testified " Carroll and me went over together to the fire-boss, McDonald. Carroll went up to him and asked him how his place was this morning. ' It is all right, John,' says he, ' there is no danger.' Carroll went right up to his place then. I just hadn't time to work or anything, only just took off my coat at the box when a little door-tender come running and said, there is two men burned." * * *

Carroll was burned so badly that when Dakin was carrying him " the chunks of flesh fell off into my hands." Carroll said about a-half hour after he was burned, " but, wasn't that (the fire-boss) a terrible man to tell me that there was no gas in there—to send me in to get roasted." ·

McDonald testified that he was down at the shanty, at the foot of the shaft, on the morning of the accident, when John Carroll came there ; and that he told Carroll there was some fire in his breast, or chamber, and that he must not go in there until he had brushed it out, which he would do as soon as he had attended to some other men who were in waiting.

Matthew Gray, another witness on the part of the defence, said that he was present at the scene of the disaster soon after it occurred, when John P. Moore, the mining-boss, came up, and seeing the condition of Carroll, the mining-boss asked him " how it was caused;" whereupon, Carroll replied that " it was his own fault, and that he had nobody but himself to blame for it." Moore, himself, testified that he came there immediately after the explosion, and seeing Carroll standing on the outside of the gangway, he said to him, " John, how is this ? did not the fire-boss tell you there was fire in your breast ?" whereupon, Carroll replied, " Yes, I have nobody to blame but myself."

The verdict was for plaintiffs for $4000. The defendants took this writ and made the following assignments of error :

1. The court, Harding, P. J., erred in charging the jury as follows :

[Delaware and Hudson Canal Co. *v.* Carroll.]

" The action is brought under the provisions of an Act of the General Assembly, passed March 3d 1870, entitled ' An Act to provide for the health and safety of persons and property in coal mines.' "

2. In charging as follows :

" They," the company, " employed Mr. John P. Moore as their mining-boss, and upon him was imposed the various duties enumerated in the section of the Act of Assembly to which I have called your attention. These duties constituted a distinct branch of the mining operations carried on in that shaft."

" The mining-boss was the agent of the company, appointed specially to oversee the workings and to maintain all the instrumentalities indicated by the law as necessary to insure the health and safety of the workmen. He had entire charge of this branch of the business; and, hence, if he was guilty of neglect of duty, and the life of John Carroll was lost in consequence, the widow and children, plaintiffs here, may recover against the common employer. The negligence of the agent, or as in this case, the negligence of the mining-boss, is the negligence of the employer, and the latter is responsible therefor."

3. In charging as follows :

" Was the mining-boss, John P. Moore, or his acknowledged assistant, James McDonald, guilty of negligence on the morning of May 26th 1873 ?"

4. In charging as follows :

" If the testimony of John Dakin is true, the plaintiffs are entitled to recover."

5. The court erred in their answer to defendants' fourth point, viz. :—

" The action in this case, so far as the children of the deceased are concerned, not having been brought within one year after the death of Carroll, cannot be sustained as to them, and no other or larger verdict can be found against the defendants than might be rendered if the widow were the only party on the record as plaintiff."

The answer thereto was : " That proposition we negative. The action was brought within the year in the name of the widow. After the expiration of the year, it was amended so as to bring in the children. No new cause of action was introduced; hence, if the plaintiffs are entitled to recover, they are entitled to recover generally, without any difference; certainly without that difference noted in the point."

6. The court erred in permitting the addition of the minor children of John Carroll, as co-plaintiffs with Mary Carroll, widow, in whose name alone the suit was originally brought, after more than a year from the date of the death of John Carroll had expired.

7. The court erred in their answer to the defendants' fifth point, viz. :—

[Delaware and Hudson Canal Co. *v.* Carroll.]

"Under all the testimony in the case, there was negligence on the part of Carroll which contributed to his injury, and therefore the verdict should be for the defendants."

The answer thereto was: "We have clearly stated to you in the general charge, under what circumstances the verdict should be for the defendants. We cannot affirm this point."

8. The court erred in their answer to defendants' sixth point, viz. :—

"There is no evidence in this case to establish the negligence of the company defendant; and if the fire-boss was guilty of any negligence or dereliction of duty, then it was the negligence, not of the company, but of a co-employee of the deceased, and therefore the plaintiffs cannot recover."

The answer thereto was: "We negatived that point in the general charge; we stated our views at length in respect to the particular matter involved; we negative it again."

*Stanley Woodward* and *Andrew T. McClintock*, for plaintiffs in error.—The court erred in assuming that the suit was brought under the Act of 1870. It was in fact brought under the Act of April 26th 1855, and the declaration is at common law, for death caused by negligence. There was no evidence, however, to show that defendants had not conformed to the Act of 1870; that the injury was the result of defective ventilation, or that those in charge of the mine were incompetent. The jury were misled by the charge, and in the submission of the case as entirely under the Act of 1870. There was no evidence that the duties imposed upon the mining-boss "constituted a distinct branch of the mining operations," or that the mining-boss had neglected a single duty, or was in any manner incompetent to fulfil the duties of his position, or that he had any authority to employ or dismiss a single miner or laborer, or to employ or dismiss his assistants, the fire-bosses, or that he failed in any way to employ or select competent and careful assistants, or had in any way the right or duty to employ or select his assistants.

It was error, therefore, to instruct the jury, as a matter of law, that the mining-boss was not a co-employee, but the agent of the company, and that under the evidence they might inquire into the question of his negligence.

No distinction was taken by the court, in their charge, between the liability of the defendants for the negligence of Moore, the mining-boss, or of McDonald, the fire-boss, and the jury are left to infer that the same rule would apply, whichever of these employees the jury might find to have been guilty of negligence.

The testimony of Dakin is in contradiction of the testimony of McDonald and Gray, the fire-bosses, in regard to notice to Carroll that there was gas in his chamber. It does not refer to Moore, the

[Delaware and Hudson Canal Co. *v.* Carroll.]

mining-boss, or prove any neglect on part of Moore. If taken as true, it only proves that McDonald, the fire-boss, was negligent in not warning Carroll of the presence of gas in his chamber. And assuming that McDonald did not discharge his duty, such failure was the negligence of a co-employee. The defendant certainly was at least entitled to have the question submitted to the jury, under the evidence, whether or not McDonald was the agent of the company, or a co-employee with Carroll; whether or not they were employed in the same general business, and fellow servants therein. That question was taken from the jury, and the binding instruction given, that "if John Dakin's testimony was true," they must find for the plaintiffs.

Mullen *v.* Steamship Co., 28 P. F. Smith 25, does not sustain the charge of the court.

The miner and the mine-boss and his assistant were "acting together, under one master, in carrying out a common object," employed in the same mine and in the same general business, and must, therefore, under the well-settled authorities, be held to be fellow servants: Morgan *v.* Vale of Neath Railway Co., Law Rep. 1 Queen's B. 149; Howells *v.* Landore Siemens Steel Co., Law Rep. 10 Queen's Bench 62; Murray *v.* Currie, Law Rep. 6 Common Pleas 24; Feltham *v.* England, Law Rep. 2 Queen's Bench 33; Gallagher *v.* Piper, 111 Eng. C. L. 668; Murphy *v.* Smith, 115 Id. 361; Wilson *v.* Murray, Eng. L. Rep. 1 H. L. Scotch Cases 326; Caldwell *v.* Brown, 3 P. F. Smith 453. The principle governing this case was decided in the recent case of the Lehigh Valley Coal Co. *v.* Jones, 5 Norris 432, where a mining-boss was held to be a "fellow servant."

*Henry W. Palmer, Charles Pike* and *John Lynch,* for defendants in error.—The company did not have the necessary appliances to supply the requisite quantity of fresh air, and are responsible for an accident resulting therefrom.

The Lehigh Valley Coal Co. *v.* Jones, is distinguishable from this case. There was a superintendent in that case who had control of the mine. Here it was not shown that there was any other superintendent than the mining-boss. He was in charge of the mine and stands next to the company. He is the superintendent, and should be considered so under the ruling in the Lehigh Valley Coal Co. *v.* Jones, *supra.*

In case of a corporation like the plaintiffs, "It is not the company but the officer to whose care is committed this particular department of its business, who is expected to use ordinary care in the conduct thereof, and whose negligence therein is the negligence of the company:" Mullen *v.* Steamship Co., 28 P. F. Smith 25. A master is liable for injuries suffered by his servants, where, by his own negligence or malfeasance, he has enhanced the risk to

[Delaware and Hudson Canal Co. *v.* Carroll.]

which the servant was exposed by the natural risk of the employment, or has knowingly, and without informing the servant, used defective machinery which has caused the injury: Wedgwood *v.* C. & N. W. Railroad Co., 41 Wis. Rep. 478 ; The Cumberland & Pa. Railroad Co. *v.* The State of Maryland, use of Morgan, Court of Appeals, Maryland, 2 L. & E. Rep. 529 ; Cayzer *v.* Taylor, 10 Gray (Mass.) 474 : Snow *v.* Housatonic Railroad Co., 8 Allen (Mass.) 441 ; Fifield *v.* Northern Railroad Co., 42 N. H. 225 ; Noyes *v.* Smith, 28 Vt. 59.

Mr. Justice PAXSON, delivered the opinion of the court, May 7th 1879.

This was an action on the case brought by the widow and minor children of John Carroll, deceased, against the Delaware and Hudson Canal Company, to recover compensation for injuries to the said John Carroll, resulting in his death.

We are unable to say that the court below erred in its charge to the jury, as contained in the first specification, that the action was brought under the provisions of the Act of Assembly, passed March 3d 1870, entitled, "An act to provide for the health and safety of persons and property in coal mines." The declaration is not given, but we infer from the points submitted, the charge of the court, and the manner in which the case was tried, that the action was under the Act of 1870. The plaintiffs below evidently so regarded it, and it is no hardship to them to dispose of the case upon that theory.

Assuming then that the action was so brought, what are the responsibilities of the defendants under the act? The 24th sect. thereof provides (see Pamph. L. 1870, p. 12,) that "For any injury to person or property occasioned by any violation of this act, or any wilful failure to comply with its provisions by any owner, lessee, or operator of any coal mine or opening, a right of action shall accrue to the party injured for any direct damages he may have sustained thereby ; and in case of loss of life by reason of such violation or wilful failure aforesaid, a right of action shall accrue to the widow and lineal heirs of the person whose life shall be lost, for like recovery of damages for the injury they shall have sustained." The duties enjoined by said act, so far as they relate to this case, are contained in the eighth section, which provides that "the owner or agent, as the case may be, in charge of every coal mine or colliery, shall employ a competent and practical inside overseer, to be called a mining-boss," &c. The section then goes on at considerable length to define the duties of the mining-boss, which are in brief to keep a careful watch over the ventilating apparatus, and examine daily the working of all mines generating explosive gases, and to see that they are in a safe condition before the men enter them in the morning, &c., for the better protection

[Delaware and Hudson Canal Co. v. Carroll.]

of the workmen from danger. The defendants employed one John P. Moore as their mining-boss, who was in charge of the works at the time the accident occurred by which Carroll lost his life. The contention of the plaintiffs is that Moore, the mining-boss, and James McDonald, his assistant, were guilty of negligence, and that such negligence was the cause of the injuries which resulted in Carroll's death; and that the defendants are liable in this action for such negligence.

It is too plain for argument that if the defendants have not violated said act they are not responsible. In what respect have they transgressed its provisions? They employed a mining-boss, as required by the act, and there is no allegation that he was not a competent and practical man. No attempt was made to show that the defendants were guilty of negligence in employing a mining-boss; that they employed an incompetent man knowing him to be so, or employed him without knowledge of his capacity or fitness, or without making such inquiry as to his qualifications, as a man of ordinary prudence would do. The defendants having placed a mining-boss in charge of the works are not in ·default. Much less have they been guilty of a violation of the act, which is the ground and the only ground upon which a recovery can be had. The negligence of the mining-boss, if it exists, might make him liable to the plaintiffs; it certainly cannot render the defendants liable under this Act of Assembly. We think, therefore, there was error in those portions of the·charge contained in the second, third and fourth specifications.

The fifth and sixth and seventh specifications are not sustained. The objection to joining the minor children as co-plaintiffs with the widow, notwithstanding more than a year had elapsed since suit brought, is purely technical, and without merit. The action was commenced by the widow within one year from the time the injury occurred. Bringing in the children subsequently by amendment, introduced no new cause of action, and worked no injury to any one, even if the suit were brought under the Act of 1855. The aforesaid Act of 3d March 1870, contains no provision limiting the time within which suit must be brought for a violation of its provisions. In regard to the seventh specification, it is sufficient to say that we do not think the court was required to say under the evidence that Carroll was guilty of contributory negligence.

It remains to consider the eighth specification, which refers to the defendants's sixth point. The learned judge negatived it both in his general charge and in his answer. We think it was error to decline the point whether we regard this action as brought under the Act of 1870 or 1855. If under the former the defendants are not responsible for the negligence of the mining-boss, as has already been stated; if under the latter, the plaintiffs are met with the difficulty that the mining-boss was a co-employee of the

[Delaware and Hudson Canal Co. *v.* Carroll.]

deceased. There is no room for the allegation that a mining-boss under the Mine Ventilation Act of 1870 is an agent of the mine owner or a co-employer. He is clothed with no powers of engaging and discharging miners and laborers at pleasure. He is merely a fellow servant with the miner. He is nowhere in the act designated as the agent of the owner of the mines. His duties are specified in the same manner that the duties of the engineer are specified in the 16th sect., and as the duties of other employees are defined in various other sections. He has no general power of control. His duties are confined to special matters. That they are different from those of others of his fellow co-laborers, or even that they are of a higher grade does not matter: Caldwell *v.* Brown, 3 P. F. Smith 453; Wright *v.* N. Y. Central Railroad Co., 25 N. Y. 565; Morgan *v.* Vale of Neath Railroad Co., Law Rep. 1 Q. B. 149. This view is not in conflict with Mullan *v.* The Steamship Co., 28 P. F. Smith 25. There the hands employed were under the charge of John Corcoran, the chief stevedore. He engaged and discharged them at pleasure. Under the evidence it was held that it was for the jury to pass upon the relations between the stevedore and the laborers, and to find whether they were engaged in a common employment. In the case in hand, the duties of the mining-boss are fixed by an Act of Assembly. It is not, therefore, essential that a jury should fix the relations between the mining-boss and the deceased.

The case of Howell et al. *v.* The Landore Siemens Steel Co., Limited, Law Rep. 10 Q. B. 62, is directly in point. There the defendants were the owners of a colliery within the Coal Mines Regulation Act of 1872 (35 & 36 Vict. c. 76), and they had appointed a certified manager, as required by sect. 26. A miner employed in the colliery was killed by an explosion of fire damp, caused by the negligence of the manager. It was held "that the fact that the manager was appointed pursuant to the act did not put him in any different position from that he would have held had he been simply appointed manager; and that he was a fellow servant with the deceased, and the defendants were therefore not liable to the representatives of the deceased for his death."

Judgment reversed.