# Wolcutt v. Erie Coal & Coke Company, Appellant.

*Negligence—Master and servant—Mines and mining—Mine foreman —Mine superintendent—Fellow servant—Act of May 15, 1893, P. L. 52.*

While a mine foreman is a fellow servant of the miners employed in the mine, yet if the company which employs him makes him also the superintendent of the mine, and through his negligence the roof of an entry falls and injures a miner, the company will be liable in damages for his negligence to the person injured.

Argued Oct. 11, 1909. Appeal, No. 80, Oct. T., 1909, by defendant, from judgment of C. P. Butler Co., June T., 1906, No. 10, on verdict for plaintiff in case of William W. Wolcutt v. Erie Coal & Coke Company. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before ORMEROD, P. J., specially presiding.

The facts are stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $2,500. Defendant appealed.

*Error assigned* among others was in refusing binding instructions for defendant.

*T. C. Campbell*, with him *A. M. Christley*, for appellant.— The courts have held that the legislation requiring a mine

foreman is in the interest and for the protection of the miners; that the mine foreman is a creature of the legislature, selected in obedience to law, and the act requires the owner of the mine, nolens volens, to employ him; and that he is a fellow servant of the miners, and if accidents occur which can be traced to the negligence of the mine foreman, the owner is not liable: Redstone Coke Co. v. Roby, 115 Pa. 364; Haley v. Keim, 151 Pa. 117; Hall v. Simpson, 203 Pa. 146; Del., etc., Canal Co. v. Carroll, 89 Pa. 374; Reese v. Biddle, 112 Pa. 72; Lineoski v. Coal Co., 157 Pa. 153; Gulla v. Lehigh Valley Coal Co., 28 Pa. Superior Ct. 11; Brick v. Rochester etc., R. R. Co., 98 N. Y. 211; Ross v. Walker, 139 Pa. 42; Ricks v. Flynn, 196 Pa. 263.

Where an employee occupies a dual character he is a fellow servant and the employer is not liable to his coworkers for his negligence, unless the negligence related to a duty imposed upon the employer: Casey v. Paving Co., 198 Pa. 348.

*Thomas H. Greer*, with him *John M. Greer* and *John B. Greer*, for appellee.—The act is evaded when the operator divides the time of the person employed, compelling him to act in two capacities—that of inside overseer, or mine foreman, and superintendent.

Whether or not a person occupying a given position in the performance of certain work is a fellow servant, or a vice principal of the defendant, is a question for the jury: Mapes v. Packing Co., 31 Pa. Superior Ct. 453.

OPINION BY MR. JUSTICE MESTREZAT, January 3, 1910:

This is an action of trespass brought by the plaintiff to recover damages for injuries which he sustained on September 21, 1904, while employed in the defendant's coal mine in Butler county. The defendant company is the owner and operates a coal mine in that county employing from 120 to 125 men. The plaintiff was employed as a trip rider, and when riding into the mine in the main entry a portion of the roof of the mine fell on him, breaking his leg. The plaintiff alleges that the defendant was negligent in not removing the loose

rock which fell or in not supporting it by timbers so that it would be safe. The case was submitted to the jury which rendered a verdict in favor of the plaintiff, and judgment having been entered thereon, the defendant has taken this appeal.

The defendant sets up as a defense that it had employed a mine foreman in the mine as required by the Act of May 15, 1893, P. L. 52; that it was the duty of the mine foreman under the act to keep the roof of the entry in safe condition; that the mine foreman was a fellow servant of the plaintiff and if there was negligence resulting in injury to the plaintiff, it was the negligence of a fellow servant for which the defendant was not responsible. It appears from the evidence that prior to May 1, 1904, the defendant had in its employ a mine foreman and a superintendent, and on or about that date the superintendent left the service of the company. The defendant alleges that in April, 1904, one George Mitchell was appointed by the board of directors as mine foreman and was so employed from the date of his appointment until the time the plaintiff was injured in September, 1904. The defendant's superintendent remained in the employ of the company until June 11, 1904, when he left, and thereafter it is alleged that Mitchell, the mine foreman, performed the duties of superintendent in addition to those of mine foreman. On the trial of the case the plaintiff offered testimony to show that Mitchell was the superintendent of the mine and performed the duties incident to the position; while the defendant company contended and produced testimony tending to show that Mitchell was a duly certified mine foreman and was employed as such in its mine at the time the plaintiff received his injuries. The learned trial judge charged the jury that if they found that Mitchell was employed as mine foreman alone there could be no recovery, as the law imposed upon the mine foreman the responsibility for negligence in providing for the safety of the miners; but that if they found that Mitchell was employed in the dual capacity of superintendent and mine foreman they were to determine whether the negligence which resulted in the injuries to the plaintiff was that of Mitchell as mine foreman or as superin-

tendent. The testimony was ample to justify the jury in finding that Mitchell was the superintendent of the mine, and also that he performed some of the duties of a mine foreman and possibly that he was a duly certified mine foreman and was employed as such in the defendant's mine at the time of the accident to the plaintiff.

The Act of May 15, 1893, P. L. 52, is entitled, "An act relating to bituminous coal mines, and providing for the lives, health, safety and welfare of persons employed therein." It is very comprehensive and is intended, so far as legislation can do so, to protect the men who are employed in the bituminous coal mines of the state. For this purpose, it imposes specific duties upon the owner and upon certain employees engaged in the mining operations. The paramount purpose is to protect the miner while he is engaged in the mines, and to that end provides in detail the duties to be performed by the employees and those engaged in the mine who have control of its operations. To carry out the purpose of the act, art. 6, sec. 1, requires the operator or superintendent to employ "a competent and practical inside overseer . . . . to be called mine foreman," who "shall devote the whole of his time to his duties at the mine when in operation," and defines his duties, some of which are to keep a careful watch over the ventilating apparatus, the airways, and traveling ways, to remove dangerous coal, overhead slate and rock on the traveling and hauling ways, and to see that sufficient props, caps and timbers are sent to the mine as required. Section 8 of the article requires a record book to be kept at all mines which is to be provided at the expense of the commonwealth and in which the mine foreman is required to enter a report of the condition of the mine, signed by himself, "which shall clearly state any danger that may have come under his observation during the day, and shall also state whether he has a proper supply of material on hand for the safe working of the mine, and whether all requirements of the law are strictly complied with." There are other duties which he is required to perform by the act but which are immaterial in this case except to show generally the duties required to be performed by him.

The act also enjoins certain specific duties on the fire boss, the miners, the drivers, the trip riders, the engineer, the fireman, and others engaged in operating the mine.

Article 22, sec. 1, of the act, declares that the term "superintendent" means the person who shall have, on behalf of the operator, immediate supervision of one or more mines. Section 1 of art. 7 prohibits the superintendent from obstructing the mine foreman or other officials in the fulfillment of any of their duties required by the act. The same section requires the superintendent, on behalf and at the expense of the operator, to keep on hand in the mine at all times a supply of materials and supplies required to preserve the health and safety of the employees as ordered by the mine foreman and required by the act; he is also required at least once a week to examine and countersign all reports entered in the mine record book "and if he finds that the law is violated in any particular, he shall order the mine foreman to comply with its provisions forthwith." Some other duties as to the internal workings of the mine are imposed upon the superintendent, his general duties, however, being to supervise the mine on behalf of the operator or owner.

By this reference to the statute, it will be observed that the legislature has attempted to protect the health and safety of the miners, in so far as it can be done, by defining the duties of the parties engaged in operating the mine. These duties are obligatory, and a neglect or refusal to perform them is made a misdemeanor by art. 21 of the act punishable by fine or imprisonment, and a right of action against the owner or operator is given to any party who is injured by a failure to comply with the provisions of the act by the owner, operator or superintendent.

The mine foreman is required to be "a competent and practical inside overseer," and his duties, as defined by the act, are to be performed on the inside, and not on the outside of the mine. The internal workings of the mine are in his control and subject to his direction and management. His duty, in a word, is to see that the interior of the mine is kept in a proper and safe condition so as not to endanger the health, safety or

lives of the miners. In this position he is supreme, and the superintendent, who is the representative of the owner, cannot interfere with him in the discharge of his duties. While his powers are extensive and ample in regulating and controlling the internal operations of the mine so as to protect those employed therein, yet he is in no sense the agent or representative of the owner of the mine. He is, like others working in the mine, an employee of the owner but with specific, statutory duties to perform. His position is thus defined by Mr. Justice PAXSON delivering the opinion of this court in Delaware & Hudson Canal Co. v. Carroll, 89 Pa. 374, when speaking of a mining boss under the mine ventilation act of 1870, similar in this respect to the act of 1893 (p. 382): "There is no room for the allegation that a mining boss (mine foreman) under the mine ventilation act of 1870 is an agent of the mine owner or a co-employer. He is clothed with no powers of engaging and discharging miners and laborers at pleasure. He is merely a fellow servant with the miner. He is nowhere in the act designated as the agent of the owner of the mines. His duties are specified in the same manner that the duties of the engineer are specified in the eleventh section, and as the duties of other employees are defined in various other sections. He has no general power of control. His duties are confined to special matters." We have uniformly held that a mine foreman is a fellow servant of the other employees engaged in the mine, and in none of our cases has it been suggested that he is a representative or agent of the owners. Being a fellow servant of the other laborers in the mine, the owner is not liable for injuries resulting to them by neglect of the foreman to perform his statutory duties. It may therefore be admitted that if Mitchell was a duly certified mine foreman and was engaged only as such in this mine at the time the plaintiff was injured, and the plaintiff's injuries resulted from the foreman's negligence, the defendant company would not be liable.

But the jury has found that Mitchell was, at the time the plaintiff was injured, acting as superintendent as well as mine foreman. The defendant contends, however, that conceding he was acting in such dual capacity, it was his duty as mine

foreman and not as superintendent to have removed the over-head rock in the haulage way or protected it by props; and that his negligence or refusal to perform this duty being in his capacity as mine foreman the defendant company is not responsible for his negligence. With this contention we do not agree. The duties imposed by the act on the mine foreman do not relieve the superintendent from the duties which he owes to the employees of the mine. When the owner employs a certified mine foreman and puts him in charge of the internal workings of the mine, he has done all that the law requires him to do and he is not required through his superintendent to inspect and look after the interior of the mine. The law presumes that the certified foreman is fully competent, more so even than the superintendent or the owner, to keep the mine in proper and safe condition, and hence it does not impose the further and additional duty on the owner of requiring the superintendent to look after the interior of the mine, and hold him responsible for the negligence of the superintendent in failing to perform such duty. If, therefore, the owner had placed Mitchell, a certified mine foreman, in charge of the mine, and if he, as the act enjoined, had devoted "the whole of his time to his duties at the mine when in operation," the defendant company would be relieved from liability for the injuries sustained by the plaintiff. But here we have a different state of affairs. Assuming that the defect in the roof arose from the negligence of Mitchell, and that it was his duty to remove it, the existence of the defect was within the knowledge not only of the mine foreman but that of the superintendent, the representative of the owner. Suppose the positions of mine foreman and superintendent had been filled by different parties, and the knowledge of the defect had come not only to the foreman but also to the superintendent, and the latter had knowledge that the former had not performed his duty and removed it, would it not have been the duty of the superintendent to have taken the necessary steps to have remedied the defect? In other words, when the superintendent knows that the mine foreman has, for any reason, become unfit to perform his duties, or is negligent in the performance of them and permits the mine to

become dangerous and unsafe, is it not the superintendent's duty to take the necessary steps to remove the danger and place the mine in a safe condition? This question is answered and the duty is imposed by art. 7, sec. 6, of the act of 1893 in which, as we have seen, it is provided that the superintendent shall examine and countersign all reports entered in the mine record book, "and if he finds that the law is being violated in any particular, he shall order the mine foreman to comply with its provisions forthwith."

The act does not relieve the owner from liability for an unsafe mine except when he complies strictly with it, and then it does not relieve him if he has knowledge through his superintendent that the mine foreman is incompetent and that the mine is unsafe. The statute provides the remedy, and it is incumbent upon the owner when, through his superintendent, he finds the existence of unsafe conditions in the mine to proceed to have these conditions removed in the manner pointed out in the statute. If the roof in the haulage way was defective and Mitchell had knowledge of it, as the evidence justified the jury in finding, the superintendent, representing the owner, had knowledge of the defect and of the neglect of the foreman to remove it. If Mitchell as mine foreman neglected his duty in removing the defect, it is clear that if another party had been superintendent and had had this knowledge, it would have been his duty to have taken immediate steps to remove it and thereby protect the employees in the mine. Mitchell, acting in a dual capacity, his knowledge of the defect in the roof of the haulage way was not only as mine foreman but as superintendent, and in the latter capacity, the defendant is liable for his failure to remedy the defect which caused the injury to the plaintiff.

The conclusion we have reached places no hardship upon the owners of mines. The act protects them by imposing duties upon the mine foreman whom we hold to be a fellow servant with the other laborers in the mine, and for whose negligence the owner is not responsible. If instead of placing the internal operations of the mine under the supervision and control of an employee whose duties are prescribed by statute

and the performance of which fully protects the miners and relieves the owner from liability for injuries to the other employees, the owner puts his superintendent in charge of the interior of the mine, he must assume responsibility for the latter's negligence if it results in injury to another employee. By placing his superintendent in charge of the mine, the owner is at once notified of its unsafe condition, and if the mine foreman, although the same person as the superintendent, permits the continuance of such condition, the owner must be treated as failing in his duty to remove the defect, and is thereby liable for the injury which it occasions.

The judgment is affirmed.