## PITTSBURGH-BUFFALO CO. v. CHEKO.

(District Court, W. D. Pennsylvania. June 19, 1912.)

### No. 382.

1. MASTER AND SERVANT (§ 103*)—DUTY TO EMPLOYÉ—SAFETY OF TOOLS, ETC.
   One owes one's employés a nontransferable duty to furnish them with reasonably safe appliances.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 175; Dec. Dig. § 103.*]

2. MASTER AND SERVANT (§ 103*)—COAL MINES—SAFETY OF APPLIANCES—STATUTORY PROVISION.
   That Act Pa. May 15, 1893 (P. L. 52), which requires a bituminous coal mine operator to employ a certified mine foreman, with control over the mine, does not relieve an operator from liability for injury to a miner resulting from failure of a boss to have a defective appliance repaired, though the boss was employed by that foreman.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 175; Dec. Dig. § 103.*]

At Law. Action by John Cheko against the Pittsburgh-Buffalo Company. On motion by defendant for judgment. Motion overruled.

Stone & Stone, of Pittsburgh, Pa., for plaintiff in error.
Brown & Stewart, of Pittsburgh, Pa., for defendant in error.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

BUFFINGTON, Circuit Judge. The plaintiff, John Cheko, operated a coal-cutting machine in defendant's mines. These machines were moved from place to place as required on compressed air motors operated by regular motormen. The verdict establishes the fact that in the absence of motormen and with the knowledge of defendant the operators of coal-cutting machines were accustomed to themselves operate the motors to move their cutting machines. On the day of the accident Cheko took one of the motors to so move his machine, and when nearing a closed ventilating door in the mine he was unable to stop the car by reason of its defective brake, and was badly injured by a collision with said door. The proofs on behalf of the plaintiff tended to show that Williams, a regular motorman, a day or so before the accident, found the brake on this motor was defective and would not take hold. He reported the fact to Murphy, the motor boss, who had charge of repairing the motors and of the machine shop where such repairs were made. The motor, however, was left on the switch, where it was accustomed to stand. On the day following, or possibly the second day, Cheko, not knowing the brake was defective, took and used the machine as above stated.

[1] Of the primary, nontransferable duty of an employer to furnish an employé with reasonably safe tools and appliances there is no question, and as to that duty the jury was charged in reference to the facts of this case in language to which no objection was then or now made. The verdict may therefore be assumed to settle the question of negligence against the defendant in that regard.

[2] But from liability therefor defendant contends to be relieved by reason of the act of Pennsylvania of May 15, 1893 (P. L. 52), entitled "An act relating to bituminous coal mines, and providing for the lives, health, safety and welfare of persons employed therein." Its contention in that regard, in substance, is that said act compelled the defendant to employ a certified mine foreman, who had exclusive control of the mine; that the said mine foreman employed Murphy and Williams; that the state, having compelled the defendant to employ such mine foreman, has in effect taken the control of the mine out of the defendant's hands, and therefore for the negligence of Murphy in failing to repair this motor the defendant is not answerable.

To this contention we cannot accede. The act in question, while creating the office of mine foreman and defining his duties, nowhere confers on him the right or duty of furnishing or overseeing the furnishing of appliances for transporting coal. That act by article 6, § 1, provides that:

"In order to better secure the proper ventilation of the bituminous coal mines and promote the health and safety of the persons employed therein, the operator or superintendent shall employ a competent and practical inside foreman for each and every mine, to be called mine foreman; said mine foreman shall have passed an examination and obtained a certificate of competency or of service as required by this act. * * * Said mine foreman * * * shall keep a careful watch over the ventilating apparatus and air-

ways, traveling ways, pump and pump timbers and drainage, and shall often instruct and as far as possible, see that as the miners advance their excavations all dangerous coal, slate and rock overhead are taken down or carefully secured against falling therein, or on the traveling or hauling ways, and that sufficient props, caps and timbers of suitable size are sent into the mine when required, and all props shall be cut square at both ends, and as near as practicable to a proper length for the places where they are to be used, and such props, caps and timbers shall be delivered in the working places of the mine."

Other sections provide in detail for the mine foreman's carrying out these requirements. The only statutory provision enabling him to hire employés is the seventh, which provides that, where unable personally to carry out all the requirements of the act:

"He shall employ a competent person or persons not objectionable to the operator, to act as his assistant or assistants, who shall act under his instructions, and in all mines where firedamp is generated the said assistant or assistants shall possess a certificate of competency as mine foreman or fire boss."

Now it is quite clear that before this act was passed a mine foreman, when thereto authorized, could employ persons to work in the mines, for which employé's negligence the mine owner was responsible. Such being the case, did the state, by requiring such foreman to be of certified capacity and imposing on him certain statutory duties in overseeing the ventilation, timbering, and working of the mines, relieve the operator, for example, of the duty of providing reasonably safe tools and appliances, or from the negligence of its employés in relation thereto? If, in pursuance of his employment, a certified mine foreman did or omitted to do any act relating to the furnishing of tools or appliances, it is manifest that he must have been acting in pursuance of some duty or work the operator employed him to do, since the act in question imposed no such statutory duty upon him. Speaking of a mine foreman under the Anthracite Mines Act (Act June 2, 1891 [P. L. 176]) the Supreme Court in Durkin v. Kingston, 171 Pa. 201, 33 Atl. 238, 29 L. R. A. 808, 50 Am. St. Rep. 801, said:

"The state insists on his employment by the mine owner, and in the name of the police power turns over to him the determination of all questions relating to the comfort and the security of the miners, and invests him with the power to compel compliance with his directions."

And in Wolcutt v. Erie Co., 226 Pa. 208, 75 Atl. 198:

"The internal workings of the mine are in his control and subject to his direction and management. His duty, in a word, is to see that the interior of the mine is kept in a proper and safe condition, so as not to endanger the health, safety, or lives of the miners. In this position he is supreme, and the superintendent, who is the representative of the owner, cannot interfere with him in the discharge of his duties."

So, also, in the case of Hood v. Connell, 231 Pa. 651, 81 Atl. 58, referring to the "underground workings of the mine," it is said:

"Both statutes clearly contemplate that the underground workings shall be under the exclusive charge and supervision of a mine foreman, and when the mine foreman has the exclusive supervision of the inside workings, the owner is relieved from responsibility for anything that may occur in the mines. In

other words, the mine foreman, with a certificate of competency from the commonwealth and a knowledge of the statutory duties imposed upon him, is answerable for the safe conduct of the mining operations. He should be, and in contemplation of law is, the absolute master of the interior workings of the mine over which he has charge as mine foreman."

So, also, in Dempsey v. Buck Co., 227 Pa. 578, 76 Atl. 748:

"Anything and everything that affects the health and safety of the workmen while engaged at their work is in the keeping and charge of the mine foreman. He is especially charged with ventilating the mine, and whatever is necessary to be done to accomplish the purpose is a statutory duty imposed upon him. * * * It is upon this theory and for this reason that the statute gives him charge of the ventilation of the mine, with authority to compel obedience to his orders, and prohibits the superintendent from interfering with him in the discharge of his duties."

From these authorities it will be seen that while, in his statutory sphere of supervising the ventilating and working of the mine, the mine foreman is supreme, yet as a statutory officer he is restricted to the performance of statutory duties. Thus in Wolcutt v. Erie, supra, the court quotes as applicable to the act of 1893 what was said by the Supreme Court in Delaware & Hudson Canal Co. v. Carroll, 89 Pa. 374, viz.:

"There is no room for the allegation that a mining boss (mine foreman) under the Mine Ventilation Act of 1870 [Act March 3, 1870 (P. L. 3)] is an agent of the mine owner or coemployé. He is clothed with no powers of engaging and discharging miners and laborers at pleasure. * * * His duties are specified in the same manner that the duties of the engineer are specified in the eleventh section, and as the duties of other employés are defined in other sections. He has no general power of control. His duties are confined to special matters."

Applying these principles to the case in hand, it is clear that while the defendant has wisely confided the entire control of the interior of its mine to the certified mine foreman, and by virtue of such control the latter engaged Murphy as motor boss and Williams as motorman, it is equally clear that such engaging of these men by the mine foreman was not by virtue of any statutory power, but by virtue of the fact that the mine owner had conferred on the mine foreman powers the act did not confer on him. Moreover, the work of these men, the transportation of coal, was a matter over which the statute gave the foreman no statutory power save the implied one of preventing it from in any way interfering with the statutory duties imposed on the foreman in the ventilating and working of the mine. It is therefore clear to us that Williams and Murphy were the employés of the defendant, that knowledge by them of the defective brake was knowledge of the defendant, and that by reason of defendant's said knowledge, its failure to repair the brake, and its leaving such defective motor standing, without warning of its defective condition, at a place that invited the plaintiff's use, the liability of the defendant is established.

For these reasons, its motion for judgment non obstante veredicto is denied, and the clerk is directed to enter judgment in favor of the plaintiff on the verdict.