## Simmons v. Lehigh Valley Coal Co., Appellant.

*Negligence—Master and servant—Mines and mining—Passageways—Duty to furnish—Mine foreman—Proximate cause—Fellow servant—Act of June 2, 1891, P. L. 176.*

1. To provide a proper passageway in a tunnel is a nondelegable duty imposed on mine owners and not one of the statutory duties imposed on mine foremen.

2. The case was for the jury in an action by an employee of defendant mining company to recover damages for personal injuries sustained by him, while passing through a tunnel in defendant's mine, where it appeared that in consequence of a failure to provide a sufficient passageway by the side of a track, upon which coal cars were standing at a curve in the track, it became necessary for the plaintiff and others with him to pass between the cars to reach the other side of the tunnel, and in so doing a keg of powder carried by one of the men came in contact with an electric trolley wire, in consequence of which an explosion occurred, and plaintiff was injured. Whether the defendant company had provided a safe passageway as required by the statute, and, if not, whether the failure so to do was the proximate cause of the accident, and whether the negligence of plaintiff or a coemployee had contributed to the accident, were all questions for the jury, and a verdict for the plaintiff should be sustained.

Argued Feb. 18, 1913. Appeal, No. 1, Jan. T., 1913, by defendant, from judgment of C. P. Schuylkill Co., Nov. T., 1906, No. 28, on verdict for plaintiff in case of William H. Simmons v. The Lehigh Valley Coal Company. Before FELL, C. J., BROWN, MESTREZAT, STEWART and MOSCHZISKER, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before BRUMM, J. See Reeder v. Lehigh Valley Coal

Co., 231 Pa. 563, and Pauza v. Lehigh Valley Coal Co., 231 Pa. 577.

From the record it appeared that the Lehigh Valley Coal Company, in August, 1904, installed in a tunnel used for transportation of coal and other material at its Primrose Colliery an electric haulage system. This tunnel was driven through the rock and was about two hundred feet long, ten feet wide and seven feet high. For a distance of from forty to fifty feet on the west or high side and near the middle of the tunnel, the tracks by reason of a curve in the tunnel were brought closer to the rib than at the ends of the tunnel. For the remaining distance on the high side, in either direction, there was room to permit persons to pass moving cars with safety. The passageway was well drained and the entire space between the rail and the rib or side of the tunnel on the west or high side, except at the point where the tracks came closer to the rib, was free from obstruction and dry. On the east side or low side of the tunnel there was a space between the side of the cars and the rib or side of the tunnel of more than two feet for the entire length of the tunnel. There was a drain along the east or low side of the tunnel through which the mine water was conducted to the sump. A trolley wire was suspended over the tracks by means of insulating brackets or mine bodies about four inches from the top or roof of the tunnel, and passed over the cars about one foot from the west side of the cars. From the time this electric haulage system was installed and up to and after the accident this tunnel was used daily as a passageway by one hundred and fifty men, on an average, and powder was carried daily through the tunnel.

About seven o'clock on the morning of September 16, 1905, the plaintiff, in company with a number of other employees, who received powder at the foot of the slope, in going to his place of work, met a loaded trip of five or six cars, standing temporarily near the mouth of the tunnel and ready for hoisting as soon as the work at the

colliery commenced that morning.  The men passed in on the high or west side of the tunnel and along the trip of cars, until they came to a point where the space between the cars and the rib or side of the tunnel narrowed and they could not proceed further.  Some of the men turned and went back the way they had come, while others, carrying powder, undertook to pass between the cars and under the trolley wire which extended over the cars.  While thus engaged one or more of the kegs of powder carried by the men was exploded and the plaintiff, with others, was severely burned.

Verdict for plaintiff for $9,579.50, and judgment thereon.  Defendant appealed.

*Errors assigned* were various rulings on evidence and instructions and refusal to enter judgment for defendant n. o. v.

*Daniel W. Kaercher,* with him *Samuel H. Kaercher* and *Frank W. Wheaton,* for appellant.

*A. D. Knittle,* with him *R. A. Freiler* and *A. C. Sherman,* for appellee.

OPINION BY MR. JUSTICE MESTREZAT, April 21, 1913:·

This case requires but brief consideration.  It arises out of the same facts as Reeder v. Lehigh Valley Coal Company, 231 Pa. 563, and Pauza v. Lehigh Valley Coal Company, 231 Pa. 577.  The plaintiff in the present case was one of a number of employees of the defendant company who entered its mine on the morning of December 16, 1905, and was injured by the explosion of a keg of powder, carried by one James Smith, another employee, which came in contact with the electric haulage wire.  The questions in the case on which the liability of the defendant turned were:  (a) Did the defendant company provide a passageway for use of its employees through the tunnel as required by the statute,

and if not, was the failure to do so the proximate cause of the plaintiff's injuries; and (b) were the explosion of the keg of powder and its resulting consequences contributed to by the negligence of the plaintiff or Smith or any other co-employee? Article 12, Rule 43, of the Act of June 2, 1891, P. L. 176, 3 Purd. 2578, provides: "Every passageway used by persons in any mines and also used for transportation of coal or other material, shall be made of sufficient width to permit persons to pass moving cars with safety, but if found impracticable to make any passageway of sufficient width, then holes of ampler dimensions, and not more than one hundred and fifty (150) feet apart, shall be made on one side of said passageway. The said passageway and safety holes shall be kept free from obstructions and shall be well drained; the roof and sides of the same shall be made secure."

In submitting the case to the jury, the learned judge said: "We may say there are two principal points involved. The one is as to whether the defendant carried out the law as laid down in this act of assembly. The other point is as to whether the plaintiff himself contributed toward this accident or whether any other co-employee at this colliery contributed toward this accident." He further instructed the jury that the failure to provide the passageway "must have been the proximate cause of the accident." We distinctly ruled in the Reeder case that the defendant company did not provide a safe passageway on the east side of the tunnel, and that whether Smith was negligent or not could not be declared by the court as a matter of law but was a question for the jury. By its own admission as to the facts of the case the defendant did not provide the requisite passageway or safety holes on the west side of the tunnel. These were the controlling questions in the present case, and having been determined in favor of the plaintiff, a verdict for him necessarily followed.

The statement of claim avers that the defendant dis-

regarded "its duties to provide a safe place for its employees to work in, and to provide safe passageways, tunnels, gangways and other openings for the safe ingress, egress and regress of its employees," and, therefore, as the case was tried and submitted to the jury, the defendant company's liability was made to depend on whether it had provided the requisite passageway for its employees and whether its failure to do so was the proximate cause of the plaintiff's injuries. Whether the electric haulage wire was in proper condition, for which the mine foreman was responsible, was not in the case save as the explosion caused by it was one of the intervening agents producing the plaintiff's injuries. For the failure to provide the proper statutory passageway the company was, of course, liable to the injured party, and the evidence fully warranted the jury in finding that it was the proximate cause of the injuries sustained by the plaintiff. Article 17, Section 8 of the Act of June 2, 1891, P. L. 176, 3 Purd. 2583, provides: "That for any injury to person or property occasioned by any violation of this act or any failure to comply with its provisions by any owner, operator, superintendent, ......a right of action shall accrue to the party injured against said owner or operator for any direct damages he may have sustained thereby." The fact that the company had placed in the mine a competent, certified mine foreman did not relieve it from the liability imposed by the statute. To provide a proper passageway in the tunnel was a nondelegable duty imposed on the mine owner and not one of the statutory duties imposed on the mine foreman.

We have carefully examined the several assignments of error, and in view of the questions involved and submitted to the jury we find no merit in any of the assignments. The learned counsel for the defendant company apparently misapprehended the issues in the case as well as the theory on which the case was tried.

The elaborate opinions of Mr. Justice ELKIN in the

cases above referred to in which the facts were the same as here relieves us from any extended discussion in the present case. We are all of the opinion that the judgment should be affirmed, and it is so ordered.