## PITTSBURGH-BUFFALO CO. v. CHEKO.

(Circuit Court of Appeals, Third Circuit. April 21, 1913.)

No. 1,673.

1. COURTS (§ 366*)—FEDERAL COURTS—CONSTRUCTION—STATE COURT DECISIONS.

Federal courts are governed by the decisions of the highest courts of the states in construing and applying state statutes.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 954–957, 960–968; Dec. Dig. § 366.*

Conclusiveness of judgment between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank of Memphis v. City of Memphis, 49 C. C. A. 468; Converse v. Stewart, 118 C. C. A. 215.]

2. MASTER AND SERVANT (§ 95½*) — INJURIES TO SERVANT — COAL MINES — SAFETY APPLIANCES—STATUTORY PROVISIONS.

Act Pa. May 15, 1893 (P. L. 52), requiring coal mine operators to employ a mine foreman for each mine, who is given entire charge of the appliances and internal workings of the mine without control of the operator, relieved the latter from liability for injury to a miner resulting from a defective brake on a compressed-air motor used for hauling cars along the ways inside the mine; the motor having been in good order when it was put into service, and a failure to keep it so being mere negligence of the mine foreman to use adequate facilities for repairs furnished him for use inside the mine.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 358; Dec. Dig. § 95½.*]

In Error to the District Court of the United States for the Western District of Pennsylvania; Joseph Buffington, Judge.

Action at law by John Cheko against the Pittsburgh-Buffalo Company. From an order denying defendant's motion for judgment (199 Fed. 525), it brings error. Reversed, with instructions to enter judgment for defendant notwithstanding the verdict.

E. O. Golden and Stone & Stone, all of Pittsburgh, Pa., for plaintiff in error.

Brown & Stewart, of Pittsburgh, Pa., for defendant in error.

Before GRAY and McPHERSON, Circuit Judges, and RELL-STAB, District Judge.

J. B. McPHERSON, Circuit Judge. [1] On October 4, 1910, John Cheko was hurt in a bituminous coal mine belonging to the Pittsburgh-Buffalo Company. The injury was caused by a defective brake on a compressed-air motor that was in use for hauling cars along the traveling-ways inside the mine. The motor was in good order when it was put into service, but for some unexplained reason the brake had come to need repairs. The verdict establishes the fact that in this matter there was negligence—in what particular it is not important to note—on the part of one or more persons on the company's pay roll. These persons were engaged in the inside operation of the mine, had been employed by the mine foreman, and

were subject to his orders. The Pennsylvania act of 1893 (P. L. 52) was in force when the injury was done, and the question for decision is whether that statute relieves the company from liability. Or, to state the point more specifically, whether the repair in question was a part of the foreman's duty. If the duty was his, the plaintiff concedes that the company is not liable; if the duty was the company's, the judgment should stand. This is the only question raised by the assignments of error, and the answer is to be found in the statute and in the decisions of the Supreme Court of Pennsylvania thereon. We are bound by these decisions, and, while they do not decide the precise point now before us, they indicate sufficiently the conclusion that should be reached.

[2] Let us first summarize the act, so far as it relates to the powers and duties of the mine foreman. Its object is expressed in the title, namely, to provide for "the lives, health, safety, and welfare, of persons employed" in bituminous coal mines. As an important means to this end, article 6 requires that for every mine "a competent and practical inside overseer" shall be employed "to be called mine foreman"; the object of his employment being distinctly stated to be "in order to better secure the proper ventilation of the bituminous coal mines and promote the health and safety of the persons employed therein." He must be an experienced coal miner, with "at least five years' practical experience, after fifteen years of age, as miners' superintendent at or inside of the bituminous mines of Pennsylvania," etc.; and he must have received a certificate of competency from the board of examiners provided by article 15. He, or an assistant chosen by him, must "devote the whole of his time to his duties at the mine when in operation * * * and shall keep a careful watch over the ventilating apparatus and the air-ways, traveling-ways, pump and pump timbers and drainage, and shall often instruct, and as far as possible see, that as the miners advance their excavations all dangerous coal, slate and rock overhead are taken down or carefully secured against falling therein, or on the traveling and hauling ways, and that sufficient props, caps and timbers of suitable size are sent into the mine when required * * * and such props, caps, and timbers shall be delivered in the working places of the mine." Article 6 in its remaining sections has more to say concerning the foreman's duties. He must see that needed timber is promptly furnished, and (in case of immediately threatened danger) if the timbers cannot be supplied when needed he must stop the work until the timber does arrive. He must see that water is removed from the miners' working places, and that proper ventilating passages are cut through and doors are placed. He must provide shelter holes along roads whereon hauling is done by animal power (and no doubt, by other power also); must measure the air currents at specified times and places; must require the workmen to use locked safety lamps under certain conditions; must give "prompt attention to the removal of all dangers reported to him by the fire boss or any other person working in the 'mine"; and must visit and examine every working place at least once every alternate day while the min-

ers are or should be at work. He must also maintain a record book and enter therein "a report of the condition of the mine, signed by himself, which shall clearly state any danger that may have come under his observation during the day, and shall also state whether he has a proper supply of material on hand for the safe working of the mine, and whether all requirements of the law are strictly complied with." Article 7 requires the superintendent, on behalf and at the expense of the operator, "to keep on hand at the mines at all times, a full supply of all materials and supplies required to preserve the health and safety of the employés as ordered by the mine foreman and required by this act"; and the superintendent must examine the reports entered in the record book, and if he finds a violation of law in any particular he must order the mine foreman to comply with its provisions forthwith.

"If from any cause he cannot procure the necessary supplies or material as aforesaid, he shall notify the mine foreman, whose duty it shall be to withdraw the men from the mine or part of mine until such supplies or material are received."

Section 2 of article 7 then distinctly provides that:

"The superintendent of the mine shall not obstruct the mine foreman or other officials in their fulfillment of any of the duties required by this act. At mines where superintendents are not employed, the duties that are herein prescribed for the superintendent shall devolve upon the mine foreman."

Blasting under certain conditions can only be done in the foreman's presence, or the presence of his representative. Article 8, § 5. He governs so distinct a province of the work that he is allowed to appeal from any decision of a mine inspector (who is a superior official) to the quarter sessions court of the proper county. Article 14. For neglect of duty or incapacity for certain reasons he must be discharged by the operator or superintendent, but a supervision of the discharge to some extent is reserved to the common pleas court of the county. Article 14. When boys under the permitted age are employed, he is to report the employment in order that they may be immediately discharged. Article 17.

The extent and variety of his duties and powers are further shown by other provisions of the act. Section 1 of article 2 provides that:

"It shall not be lawful for the operator, superintendent or mine foreman of any bituminous coal mine to employ more than twenty persons within said coal mine, or permit more than twenty persons to be employed therein at any one time, unless they are in communication with at least two available openings," etc.

Article 4, § 3, defines one of his duties when the ventilating fan shall be stopped; and sections 2, 3, and 4 of article 5 require certain things to be done when dangerous gases are present; and section 7 puts all safety lamps primarily into his care, and requires every defect in a lamp to be reported to him. Article 20 is a very significant portion of the act, and throws much light upon his duties and powers. That article contains seventy-four rules, of which the first is this:

"A mine foreman shall attend personally to his duties in the mine and carry out all the instructions set forth in this act and see that the regula-

tions prescribed for each class of workmen under his charge are carried out in the strictest manner possible and see that any deviations from or infringement of any of them are properly adjusted."

The next seven rules relate to specific matters enjoined upon himself—the building of stoppings along the air-ways, the duty to see that certain entries have a specified width, the duty of properly undermining and blasting the coal and of preserving pillars, the duty of lighting furnace fires, of attention to fans, of fencing and placarding dangerous places, of examining roads and openings, etc. The rest of article 20 lays down rules concerning the duties of fire bosses, miners, drivers, trip riders, engineers, firemen, fan engineers, furnacemen, hookers-on, cagers, and topmen, respectively, with numerous general rules. In this article, rules 1–8, 11, 13, 15, 19, 24, 26, 27, 29, 32, 33, 40, 41, 43, 44, 45, 55, 57, 58, 64, 67, and 71, refer by name to the mine foreman; and, as already stated, he is also charged by rule 1 with the duty of seeing that all the regulations are carried out "in the strictest manner possible."

These details may be wearisome, but they enable us to appreciate the importance of the mine foreman's position, and to understand clearly what the Supreme Court of Pennsylvania has said about it. Similar legislation affects the anthracite mines, and in each instance the court has held that, so far as the statute has committed the operation of the mine to the foreman, the owner has been relieved from liability for his negligence. In Durkin v. Coal Co., 171 Pa. 193, 33 Atl. 237, 29 L. R. A. 808, 50 Am. St. Rep. 801, it was decided that the Legislature could not constitutionally impose liability upon the mine-owner for the negligence of the foreman:

"Under the operation of this statute the mine foreman represents the commonwealth. The state insists upon his employment by the mine owner, and in the name of the police power turns over to him the determination of all questions relating to the comfort and the security of the miners, and invests him with the power to compel compliance with his directions. * * * The duty of the mineowner is to employ competent bosses or foremen to direct his operations. When he does this he discharges the full measure of his duty to his employés, and he is not liable for an injury arising from the negligence of the foreman. Waddell v. Simoson, 112 Pa. 567 [4 Atl. 725]."

In Golden v. Coal Co., 225 Pa. 164, 73 Atl. 1103, the foregoing decision was referred to as "a case which has never been questioned," and the court added:

"A common-law duty rests upon the employer to provide a safe place for his employés in which to work; but if he has provided a safe place which has been made unsafe by the act of the mine foreman whose authority may not be questioned, and whose direction must be complied with under penalty, he has met the full measure of his duty, and he is not to be charged with civil responsibility for a condition which he did not bring about, and which he could not control."

In Wolcutt v. Erie, etc., Co., 226 Pa. 210, 75 Atl. 198, the court said:

"When the owner employs a certified mine foreman and puts him in charge of the internal workings of the mine, he has done all that the law requires him to do and he is not required through his superintendent to inspect and

look after the interior of the mine. The law presumes that the certified foreman is fully competent, more so even than the superintendent or the owner, to keep the mine in proper and safe condition, and hence it does not impose the further and additional duty on the owner of requiring the superintendent to look after the interior of the mine, and hold him responsible for the negligence of the superintendent in failing to perform such duty. If therefore the owner had placed Mitchell, a certified mine foreman, in charge of the mine, and if he, as the act enjoined, had devoted 'the whole of his time to his duties at the mine when in operation,' the defendant company would be relieved from liability for the injuries sustained by the plaintiff. But here we have a different state of affairs."

To the same effect is Dempsey v. Coal Co., 227 Pa. 571, 76 Atl. 745:

"As will be observed, the statute requires the owner to place the underground workings of the mine and all that is related to the same in the charge and daily supervision of a mine foreman. It also especially commits to the foreman's charge all matters pertaining to the ventilation of the mine, and prohibits the superintendent from interfering with him in the performance of his duties. In other words, by command of the statute, the interior of the mine is taken out of the possession and control of the owner and placed in charge of a certified foreman, with whom the owner's superintendent is forbidden to interfere, and who has power to compel compliance with his directions so far as they relate to the safety of the employés engaged in the mine. We are therefore of opinion that, as ventilating the defendant's mine was under the control and subject to the direction of the mine foreman, it was his duty to drive such headings as were necessary to ventilate the mine. He is, by statute, expressly given 'charge of all matters pertaining to ventilation' of the mine, and it logically follows that it was his, and not the owner's, duty to determine the necessity for another heading in the breast and to drive the heading if good ventilation of that part of the mine required it. Having placed a competent mine foreman in charge and control of the mine whose duty required him to perform the service and protect the workmen against insufficient or inadequate ventilation, we think the owner has complied with the statutory injunction that he shall use precaution for the safety of the workmen, and is not responsible for the plaintiff's injuries if they resulted from the neglect or failure of the foreman to properly conduct and circulate the air currents to and along the face of the working places throughout the mine. As said in Waddell v. Simoson, 112 Pa. 567: 'The owner and operator of the mine having complied strictly with the act of assembly in providing a practical and skillful inside overseer, or mine foreman, and thereby fulfilled the duty imposed upon him by law, it is not for this or any other court to charge them with an additional obligation.'

"The owner or operator having obeyed the command of the statute by providing a constant and adequate supply of pure air for the mine, it was the duty of the mine foreman to see that it was properly circulated through the mine. Anything and everything that affects the health and safety of the workmen while engaged at their work is in the keeping and charge of the mine foreman."

In Reeder v. Coal Co., 231 Pa. 563, 80 Atl. 1121, it was held that the electric hauling system of a mine—including, of course, the trolley wire—should properly be under the supervision of the mine foreman:

"But it is argued it was the duty of the mine foreman to see that the trolley wire was maintained in good repair, and if there was any negligence in this respect it was the negligence of the mine foreman for which appellant is not liable. It has been held in a long line of cases that the mine-owner is not liable for the negligent acts of a mine foreman committed in the discharge of duties imposed upon him by law and in and about those workings over which he exercises supervision. From Lehigh Valley Coal Co. v. Jones, 86 Pa. 432, and Durkin v. Kingston Coal Co., 171 Pa. 193 [33 Atl.

237, 29 L. R. A. 808, 50 Am. St. Rep. 801], to Golden v. Mount Jessup Coal Co., 225 Pa. 164 [73 Atl. 1103], this rule has remained unbroken. It may therefore be said to be settled law. It is contended for appellee that the appellant company cannot claim the protection of this rule in the present case because the electric haulage system was not under the supervision of the mine foreman and that it was installed, maintained, and kept in repair by the company itself which employed through its superintendent an electrical engineer for this purpose. We see no reason why the electric haulage system like all other underground workings should not be under the supervision of the mine foreman. [Quoting from the act.] * * * Clearly, therefore, the framers of the statute had in contemplation that all of the underground workings should be in charge of the mine foreman, and the wisdom of so providing is not open to doubt. In dangerous work of this character it is a wise precaution to have a competent mine foreman, duly certified by the commonwealth with certain statutory duties to perform as a protection to the health and safety of the men thus employed as well as to the property of the mineowner. But the owner can claim the protection of the law only so far as he complies with its provisions. If the mineowner elect to take certain parts of the machinery and appliances out of the charge of the mine foreman and exercise direct supervision through the superintendent over the same, the law will not give him the protection he would otherwise be entitled to if all of the underground workings had been committed to the care and supervision of a properly certified mine foreman. In other words, the mineowner is only relieved from responsibility for the acts of the mine foreman in connection with the underground workings committed to his care. If all of the underground workings are committed to the care of the mine foreman as the law clearly contemplates they should be, it then becomes the duty of the mine foreman to see that all of the safeguards required to protect the men are provided, and negligence in the performance of these statutory duties by the mine foreman cannot be imputed to the owner. We think it would be safer and wiser for all parties concerned if all the underground workings should be committed to the care and supervision of the mine foreman and then there would be no division of authority. When, however, this is not done, and accidents occur, courts must accept the facts as presented and apply the law accordingly. The exception to the general rule is pointed out in Wolcutt v. Erie Coal & Coke Co., 226 Pa. 204 [75 Atl. 197]."

The same volume (231 Pa. 647, 81 Atl. 56) contains the case of Hood v. Connell, etc., Co., which decides that there is no essential difference between the acts relating to the two classes of mines:

"A careful examination of the two acts has satisfied us that there is no substantial basis for the distinction attempted to be made. It is a distinction without a difference when the purpose to be served by the statutory requirements of each act is taken into consideration. Protection to the health and lives of those employed in mining operations is the primary purpose of both statutes. Indeed, the phraseology and provisions of both acts in many of their essential and important features are almost identical. Difference in mining conditions in the two fields required the legislation to be adapted to the necessities of mining operations existing in each field. Aside from the provisions relating to these different conditions, there is but little, if any, real distinction between the anthracite and bituminous acts. As to the protection intended to be afforded to the health and safety of the men so employed, the duties of the mine foreman are practically the same under both statutes. Certainly there are no such distinguishing features as to justify a court in laying down one rule for a mine foreman in the bituminous field, and an entirely different rule for a mine foreman in the anthracite region. After all, this is more a question of fact than of law. Both statutes clearly contemplate that the underground workings shall be under the exclusive charge and supervision of a mine foreman, and when the mine foreman has the exclusive supervision of the inside workings, the owner is relieved from

responsibility for anything that may occur in the mines. In other words, the mine foreman with a certificate of competency from the commonwealth, and a knowledge of the statutory duties imposed upon him, is answerable for the safe conduct of the mining operations. He should be, and in contemplation of law is, the absolute master of the interior workings of the mine over which he has charge as mine foreman. The character of his duties as mine foreman is not necessarily changed because he may hire or discharge men working under him, or suggest where and in what capacity the men shall work, or how the entries shall be driven, or the mines be developed. He may do all of these things and still be acting in his capacity as mine foreman. Indeed, if he is a competent mine foreman, which the law presumes him to be, he is better qualified to do all of these things than any one else. The test is not the particular acts he may do in connection with the underground workings, but whether he has the charge, control, and supervision of these workings to the exclusion of any other authority. When he has this exclusive supervision, no one can dispute his authority as mine foreman, and even the owner cannot interfere with the performance of his duties. It is the duty of the mine foreman to see that all the statutory requirements intended to safeguard the health and lives of the men are properly enforced. What the law contemplates is not always done, and for this reason confusion sometimes arises on account of divided authority. It sometimes happens that the mineowner does not commit the exclusive charge of the interior workings to the mine foreman, but acting through his superintendent undertakes to exercise authority over certain parts of the interior workings without reference to the duties of the mine foreman. When this is done the owner may be held liable for the negligent acts of his superintendent or those acting under his direct authority. Again, mineowners in some instances, presumably to avoid expense, make use of the same person in the dual capacity of superintendent and mine foreman. This results in a divided responsibility and may affect the question of liability in negligence cases. It has already led to an exception to the general rule pointed out by this court in Wolcutt v. Coal & Coke Co., supra. It is always safer and wiser for all concerned to follow the statutory rule which requires the underground workings to be in charge of the mine foreman."

And in D'Jorko v. Mining Co., 231 Pa. 164, 80 Atl. 77, the court says:

"The act of May 15, 1893 (P. L. 52, 61), takes the management of mining operations in bituminous coal mines out of the control of the owner and places it in the charge and control of a certified mine foreman, with whom the owner or his superintendent may not interfere. The employment of a mine foreman is made compulsory, and his control of the underground workings of the mine is as full and absolute as that given to the foreman in anthracite mines by the act of June 2, 1891 (P. L. 176), and nothing is left to the judgment and control of the owner"—citing cases.

The latest decision on this subject is Rafferty v. Mining Co., 234 Pa. 66, 82 Atl. 1089, where the court refers to the foregoing line of cases, and says:

"These cases alike hold that for any failure of the mine foreman to discharge the duties imposed by the mining act of May 15, 1893 (P. L. 52), the mineowner cannot be held liable, inasmuch as the state makes the mine foreman its representative, and vests in him the determination of all questions relating to the security of the mines, with power to compel compliance with his directions."

The underlying principle in these cases is that an employer cannot be held responsible for the negligence of a person whom he cannot control, and to whom he is subordinated in all matters of judgment

and direction in the management of his own property. Of course, a federal court is bound to interpret the statute of a state if the rights of suitors require it, but its duty is equally clear to act with caution when the highest court of the state has not yet spoken. In the present controversy, however, we feel reasonably confident that the decisions referred to justify us in holding that the defendant company was not liable. It was bound to furnish in the first instance a machine in good order, and this was done. Thereafter the motor took its place as a factor in the interior operation of the mine, and came thereby as much under the control of the mine foreman as the rails upon which it ran, or the traveling-ways along which it was to proceed. The foreman was provided w.th a fully equipped repair shop within easy reach inside the mine, and competent repairmen were under his control whose duty it was .to set right such defects as might appear. As he was a certified foreman in charge of the interior operation of the mine, and as these repairs were a necessary part of the operation and had been put under his charge, it is difficult to see upon what ground the owner's liability can be properly rested, consistent with the. Pennsylvania decisions. If the owner (or his superintendent) is bound to repair under such conditions, then he must have the right to inspect and to interfere with the foreman's custody and use, and such a situation would probably furnish soon another example of the undesirableness of divided control. Neither had the company taken this matter out of the foreman's hands—which would present a different question. On the contrary, the duty of repair had been left in his charge, and he had been provided with all that was needed to keep the machinery in order— a shop, tools, material, and workmen—so that we see nothing to bring the situation now before us within any of the exceptions referred to in the Pennsylvania decisions.

It only remains to say that the Pennsylvania act of 1907 (P. L. 523), relating to employers' liability, does not apply in this controversy. In Toward v. Coal Co., 229 Pa. 553, 79 Atl. 129, the question was not presented; the court saying:

"The negligence of a mine foreman is not involved in this action, and the case referred to has no application. It will be time enough to decide whether the act of 1907 is applicable to the neglect of a mine foreman when such a case arises."

But in D'Jorko v. Mining Co., supra, the question did arise and was decided:

"The employer's liability act of June 10, 1907 (P. L. 523), does not effect a change in the law as before announced. If the words 'foreman or any other person in charge or control of the works' for whose negligence the employer is made liable, and who in any action for death or injury is made the agent of the employer, apply to a representative of the state, certified by it to be competent, employed by its direction and placed in charge of the works to carry out its instructions, the act would be unconstitutional. In view of the decisions upon the subject before the passage of the act, it should be assumed that it was not the legislative intent to include a class for whose negligence this court had held an employer cannot be made liable. The act should therefore be so construed as to limit its application to persons over whom an employer has control and who in fact represent .him. This is as far as legislation can go."

And this ruling was reaffirmed in Rafferty v. Mining Co., supra.

In conclusion we desire to repeat that we have simply followed what we understand to be the construction placed upon these statutes by the Supreme Court of the state, as of course we are bound to do.

In our opinion, the binding instructions asked for by the company should have been given. Accordingly, the judgment is reversed, with instructions to enter judgment in favor of the defendant notwithstanding the verdict.

NOTE.—Since the foregoing opinion was prepared, two additional decisions on this subject have been rendered by the appellate courts of Pennsylvania. The first is Mingak v. Coal Co., 51 Pa. Super. Ct. 584, and the second is Bogdanovicz v. Coal Co., 87 Atl. 295, a case in the Supreme Court not yet officially reported. In Mingak v. Coal Co., the owner was held liable for a miner's injuries, but on the express ground that the foreman had been relieved of his duty of supervising certain work and had become the mere representative of the mineowner. And in the second case the plaintiff (who was an inexperienced youth) was allowed to recover because he had not been instructed concerning the danger of certain duties that he was called upon to perform; the ground of the decision being that the duty to instruct is still the duty of the owner and has not been committed to the mine foreman.