BARNES & TUCKER COAL CO. v. VOZAR.

(Circuit Court of Appeals, Third Circuit. November 8, 1915.)

No. 1976.

1. APPEAL AND ERROR ⊚⟹272, 273—EXCEPTIONS TO INSTRUCTIONS—RULE OF COURT.

Assignments of error based on exceptions to the charge of the court, or to requests refused, not taken specifically in writing, and immediately on the conclusion of the charge, and before the jury retired, as required by rule of the appellate court, will not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1590, 1606, 1611–1623, 1625–1630, 1764; Dec. Dig. ⊚⟹272, 273; Trial, Cent. Dig. §§ 680, 689.]

2. TRIAL ⊚⟹284—INSTRUCTIONS—EFFECT OF FAILURE TO OBJECT OR EXCEPT.

Where the court in its charge assumed that a certain fact was conceded by a party, a failure of such party to object or except at the time is a waiver of any objection.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 683–685; Dec. Dig. ⊚⟹284.]

3. MASTER AND SERVANT ⊚⟹118—STATE REGULATION OF COAL MINES—LIABILITY FOR VIOLATION.

Act Pa. June 9, 1911 (P. L. 756, art. 4, § 8), requiring shelter holes to be provided on all main hauling roads in bituminous coal mines on which hauling is done by machinery, applies to all such roads, without regard to their width; and the fact that the act also requires the mine foreman to see that such shelter holes are cut does not relieve the owner from liability for injury to a miner resulting from failure to comply with such provision, if he has knowledge of the fact.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 177, 202, 209; Dec. Dig. ⊚⟹118.]

In Error to the District Court of the United States for the Western District of Pennsylvania; W. H. Seward Thomson, Judge.

Action at law by Victoria Vozar against the Barnes & Tucker Coal Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Robbin B. Wolf, of Pittsburgh, Pa., and William F. Dill, of Barnesboro, Pa., for plaintiff in error.

Geo. C. Bradshaw and Thomson & Bradshaw, all of Pittsburgh, Pa., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

McPHERSON, Circuit Judge. [1] At the close of the judge's charge to the jury, counsel for the defendant company asked for, and was allowed, "a general exception to the charge, and also * * * to the answers to such of defendant's points as were not unqualifiedly affirmed." The trial ended on February 20, 1915, but no exceptions to the charge were specified until May 29, when the court ordered them to be "filed of record in this cause nunc pro tunc, as if presented in open court on the trial of this cause immediately after the court's charge and before the jury retired." The first seven assign-

ments of error are founded on the exceptions so granted, and are in direct violation of rule 10 of this court (224 Fed. vii, 137 C. C. A. vii), which provides as follows:

"The judges of the District Courts shall not allow any general exception to the whole of the charge to the jury in a civil or a criminal trial at common law, nor shall a series of exceptions be allowed which produces the same result. But the party excepting shall state distinctly and separately the several matters in such charge to which he excepts, and only such matters shall be included in the bill of exceptions and allowed by the court. Exceptions to the charge or to the judge's action upon the requests for instruction shall be taken immediately on the conclusion of the charge before the jury retire, shall be specified in writing or dictated to the stenographer, and shall be specific and not general."

The assignments referred to will therefore not be considered, and we shall confine our attention to the eighth, ninth, and tenth. In order that these may be understood, a brief statement of facts is necessary:

The plaintiff is the widow of Joseph Vozar, a miner in the Coal Company's service, who lost his life on September 6, 1913. The mine is in Cambria county, Pa., and contains an upper and a lower vein of bituminous coal. These veins are connected by a tunnel several hundred feet long, sloping through solid rock at a 4 per cent. grade. The deceased, whose occupation was loading coal into mine cars, had been working in the upper vein. On the day in question, he and his son had quit work and were walking down through the tunnel to the mouth of the mine. The tunnel is a main haulage way, and cars are moved along its length by an electric motor. The track is about 1½ feet distant from one wall or rib, and about 6½ or 7 feet distant from the other wall. The miners were accustomed to use this means of exit, and the wider space was sufficient for safety under ordinary circumstances, especially if the cars remained on the track. While Vozar and his son were still in the tunnel, they were overtaken by a motor drawing a train, and the deceased was killed by a car that left the track (owing to the breaking of an axle) and crushed him against the wall. The only negligence charged against the company is the violation of article 4, § 8, of the Pennsylvania Act of 1911 (P. L. 756) in failing to provide shelter holes along the tunnel. The company admitted their absence, but contended that the act had been substantially complied with, because the tunnel was unusually wide, so wide in fact as to provide more protection than the statute contemplates. Another defense was that the broken axle was the proximate cause of the injury, and that no negligence in this particular had been charged or proved. Still further, it was insisted that the Pennsylvania act had put the tunnel under the exclusive control of the mine foreman, and had thus relieved the company from liability for the absence of shelter holes. And, finally, the contributory negligence of the deceased was set up as a complete reply to the plaintiff's claim. The trial judge instructed the jury as a matter of law that the company was negligent in failing to provide shelter holes, and submitted the question of proximate cause and of contributory negligence.

This brings us to the assignments of error. The eighth complains that the defendant's third point was not affirmed without qualification. The point and the answer are as follows:

"If the jury find from the evidence that the defendant had not complied with the act of assembly requiring shelter holes, if the absence of shelter holes was not the proximate cause of the injury to the decedent, the plaintiff cannot recover, and the verdict must be for the defendant.

"Answer: This point is affirmed, subject to my definition of proximate cause as given to you in the general charge."

This qualification merely recalled the attention of the jury to the general instructions on the subject of proximate cause, and, as these instructions are not the subject of a valid assignment, we see no error in the answer.

The ninth assignment is to the refusal of the fourth point:

"A failure to provide shelter holes along the haulage way was not the immediate and proximate cause of the injuries complained of, nor were those injuries the necessary and probable result of the failure on the part of the defendant to provide shelter holes, nor was the absence of shelter holes a concurrent cause of the injuries complained of; but the injuries were the direct result of the breaking of an axle, which derailed the car and thereby caused the injuries, and in this case there is no claim of any negligence in the construction, equipment, or inspection of the said car, and therefore the verdict must be for the defendant."

This point was rightly refused, because it asked the court for binding instructions, whereas the evidence required the question of proximate cause to be submitted to the jury.

The tenth assignment complains of the court's refusal to instruct the jury on the whole case in favor of the defendant. This fairly raises the question whether the failure to provide shelter holes is chargeable exclusively to the mine foreman, or is chargeable also to the company. In Pittsburgh, etc., Co. v. Cheko, 204 Fed. 353, 124 C. C. A. 451, we had occasion to consider the Pennsylvania cases on the subject of a mine foreman's status, and we need not repeat what was there said. The present controversy concerns a different aspect of the mineowner's liability, and the state court has recently decided several cases thereon that need consideration. When the tunnel was constructed in 1910, the Mining Act of 1893 was in force, which provided in article 6, § 4, that:

"On all hauling roads whereon hauling is done by machinery, and all gravity and inclined planes inside mines upon which the persons employed in the mine must travel on foot to and from their work, such shelter holes shall be cut not less than two feet six inches into the strata, and not more than fifteen yards apart, *unless there is a space of at least six feet from the side of the car to the side of the roadway, which space shall be deemed sufficient for shelter.*" Act May 15, 1893 (P. L. 62).

The tunnel complied with this section, for, although it had no shelter holes, it did leave a space of at least six feet from the side of the car to the side of the roadway. But in 1911 a new act was passed upon the subject of bituminous mines, which repealed all former statutes and provided in article 4, § 8, as follows:

"On all main hauling roads, on which hauling is done by machinery, shelter holes shall be cut into the strata, not less than two and one-half feet deep and at least four feet wide, and level with the road, and not more than fifteen yards apart; and said shelter holes shall be kept whitewashed and clear of obstruction, except in entries from which rooms are opened at regular intervals not exceeding forty-five feet: Provided, that the entrance to such rooms be kept

clear of obstruction for a distance of three feet. All shelter holes shall be made on the same side of the entry. All entries driven after the passage of this act shall have a clear space of two and one-half feet from the side of the car to the rib, which shall be made and continued throughout on one side of the entry, if in the judgment of the inspector the condition of the roof will permit, and shall be kept clear of obstruction." Act June 9, 1911 (P. L. 764).

It will be observed that this provision differs from the act of 1893, for it declares without qualification that shelter holes shall be cut on *all main hauling roads on which hauling is done by machinery.* The language is plain and unambiguous, and apparently requires shelter holes on every main hauling road on which hauling is done by machinery, without regard to its width. In our opinion, therefore, it applied to the tunnel in question. By the same section the mine foreman is charged with the duty of seeing that these shelter holes are cut:

"The mine foreman shall see that, on all animal and mechanical hauling roads, holes for shelter shall be cut into the strata," etc.

And for this reason the company denies responsibility for his failure, unless, indeed, knowledge of the defects has been brought home directly to the company.

[2] Upon this subject some evidence was given by one witness, who testified concerning the superintendent's knowledge of the situation, and this evidence is attacked as insufficient on the authority of Watkins v. Coal Co., 240 Pa. 419, 87 Atl. 860. But the attack must fail for this reason: It is evident from the following paragraph of the charge that the trial judge understood (probably from the atmosphere of the case) that the superintendent's knowledge was conceded:

"While the act of assembly provides that it is the duty of the mine foreman to see that shelter holes shall be provided as hereinbefore defined, it seems to be conceded here by the defendant's counsel that the superintendent had passed up and down that tunnel way frequently, and therefore knew, and hence the defendant company would be charged with the knowledge, that those safety holes were not provided in the tunnel. This being the case, it became my duty to say to you, as a legal proposition, that by reason of these facts the defendant company was negligent in failing to have the safety holes required by the act of assembly, because it does not do for a man to become wiser than the law, and the neglect of an important matter of this kind is negligence."

Now, if counsel knew that the court was mistaken in supposing that the superintendent's knowledge had been conceded (although no witness had been called to deny it), plainly this was the time to speak, or, if not then, certainly at the end of the charge. But no objection was made at either time, and not until three months afterwards was there any offer to except to this paragraph. To hear such an objection now would be unfair to the trial judge. His attention should have been called without delay to the fact that he was inadvertently going wrong, so that he might correct his slip, and we regard the company as bound by its failure to interpose a timely objection. "A party may not sit silent, and take his chances of a verdict, and afterwards, if it is adverse, complain of a matter which would have been immediately corrected at the time of the trial." McCollom v. Coal Co., 250 Pa. 32, 95 Atl. 380; Shade v. Llewellyn, **250** Pa. 456, 95 Atl. 583. We shall

therefore take it as a fact in the present discussion that the superintendent of the company did know of the defects in the tunnel.

[3] This being so, we think the Supreme Court of Pennsylvania has settled the controversy in two or three of its recent opinions. They were rendered under the Anthracite Act of 1891 (Act June 2, 1891 [P. L. 176]), but the rule laid down would seem to apply to the Bituminous Act also. In Bogdanovicz v. Coal Co., 240 Pa. 124, 87 Atl. 295, Justice Mestrezat thus states the rule referred to:

"The statute, however, has not relieved the owner from liability for his own neglect or failure of duty. There may be cases in which both the mine foreman and the mine owner may be liable to an injured party. If through any neglect or failure of duty the mine owner causes injury to one of his employés, the general rule applicable in such cases subjects the owner to damages for his default. If there is a dangerous condition existing in the mine, which is permitted by the negligence of the mine foreman, resulting in injury to an employé, the mine owner will be responsible, if he has knowledge of the fact and takes no steps to remove it. The owner cannot neglect this duty and escape responsibility. The statute provides that the owner shall use every precaution to insure the safety of the workmen in all cases, whether provided for in the act or not."

And a similar statement is made by Justice Frazer in McCollom v. Coal Co., 250 Pa. 31, 95 Atl. 381:

"It has frequently been held by this court that when the owner has knowledge of conditions which are hazardous to employés, or knowledge of the failure of the mine foreman to properly perform his duties in safeguarding the lives of others, it is his duty to remedy the dangerous condition; and failure on his part to do so will give rise to liability which he cannot avoid by the plea that the danger arose through the act of the mine foreman, for whose negligence he is not responsible. Wolcutt v. Erie Coal & Coke Co., 226 Pa. 204 [75 Atl. 197]; Watson v. Monongahela River, etc., Co., 247 Pa. 469 [93 Atl. 625], and cases therein cited."

To which may be added the following quotation from Dobra v. Coal Co., 250 Pa. 318, 95 Atl. 467:

"The second question raised on behalf of appellant is: 'Whether the operator of a mine, who has constructed and provided a passageway of proper width, is liable to an employé for an injury resulting from an insufficiency of space between the side of a car and a prop subsequently located by the mine foreman in charge of the mine.' That the responsibility for the care of the passageways in a mine rests upon the owner, and cannot be shifted to the mine foreman, has been settled by our decisions. In Simmons v. Lehigh Valley Coal Co., 240 Pa. 354, 358 [87 Atl. 568, 569], which was an action brought under the act of June 2, 1891 (P. L. 176), Mr. Justice Mestrezat said: 'The fact that the company had placed in the mine a competent, certified mine foreman did not relieve it from the liability imposed by the statute. To provide a proper passageway in the tunnel was a nondelegable duty imposed on the mine owner, and not one of the statutory duties imposed on the mine foreman.' To the same effect is the recent case of Watson v. Monongahela River, etc., Co., 247 Pa. 469 [93 Atl. 625]. In the present case the plaintiff testified that some two weeks before the accident he notified the superintendent of the mine and the district superintendent that the props in question were in the way and were dangerous, and, according to his statement, they said they would get them out. He also said that the props of which he complained were in the passageway during a period of a few weeks before he spoke to the superintendent about them. There was evidence sufficient to go to the jury on the question of defendant's knowledge of the alleged obstruction in the passageway."

Following these cases, therefore, the judgment is affirmed.